UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                               Case Number 20-20538
v.                                          Honorable David M. Lawson

MATTHEW DARREL CHILDERS,

        Defendant.
_____/

**OPINION AND ORDER DENYING SECOND MOTION TO SUPPRESS EVIDENCE**

Defendant Matthew Childers, charged in an indictment with production, receipt, and possession of child pornography, has filed a second motion to suppress the contents of his cell phone retrieved by execution of a search warrant and for an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). The Court held a hearing on the motion on December 14, 2002. The Court previously found that the search warrant affidavit stated facts establishing probable cause to search the defendant's cell phone, and there is no reason to depart from that ruling. The defendant has not offered sufficient information to justify an evidentiary hearing under *Franks*. Therefore, the motion will be denied.

I.

Throughout most of 2020, defendant Matthew Childers resided in Taylor, Michigan, where he lived in a home with a woman (referred to in the briefs as "HM") and her two minor daughters (named pseudonymously "MV-1" and "MV-2"). On March 16, 2020, HM went to the Taylor Police Department and reported some troubling incidents surrounding a recent falling out that she had with the defendant. HM said that after an argument, she spent the weekend at a motel and then returned to the home. She later left her daughters alone at home with the defendant while she went to the store. Upon her return, HM felt that "something was amiss." She inspected MV-1's

cell phone and found text messages sent by the defendant to MV-1, which included sexually explicit comments. During the interview at the police station, HM showed MV-1's cell phone to a detective, and he located a recently deleted file with "nude photos" and a "video of MV-1 masturbating." The detective memorialized the interview, submitted a report to Child Protective Services, and told HM to contact him again if any new information was forthcoming. Around five months later, MV-1 participated in a "Kids Talk interview" (with whom is unclear), and during that interview she disclosed that the defendant had "messed with her."

Despite HM's concerns, the residential situation persisted until mid-October 2020. The government says that on October 13, 2020, the defendant contacted Detective Andrew Snavely of the Taylor Police Department and said that he wanted to talk about the investigation. An appointment was arranged for October 15, 2020 for the defendant to come to the Taylor Police Department to "discuss the case." On the following day, October 14, 2020, Snavely obtained a warrant for a search of the defendant's cell phone based on the information that previously was disclosed by HM, supplemented by information from a phone tip that the detective received in which a witness ("S.W.") said that the defendant had talked about having a video on his phone of MV-1 masturbating. The warrant affidavit Snavely signed recites the following additional facts as grounds for the search.

Snavely wrote that on March 13, 2020, he took a walk-in report of criminal sexual conduct with a minor from HM, who said that her daughter MV-1 was 16 but due to cognitive impairment "functions at the level of a 10-year-old." HM related the incidents noted above and stated that she found sexually explicit messages from the defendant on MV-1's phone. HM also found a photo of the defendant (not sexual in nature), which was sent by defendant to MV-1, and she also noted that the defendant had "requested pictures and videos" from MV-1. Snavely's inspection of the

phone revealed nude photos and the masturbation video, which were located in a deleted items folder. Snavely also wrote that he had reviewed notes of an interview of MV-1 from the "Kids Talk" program, which occurred on September 17, 2020. During the interview MV-1 said that the defendant "messed with her," which according to the interview report was "later determined" to mean that the defendant digitally penetrated her while she was asleep. MV-1 said that she woke up during the interaction and "pushed him out of the room." Finally, on October 14, 2020, Snavely received a phone tip from a person (name redacted in the first warrant affidavit, but revealed in the affidavit for the second warrant as Stephanie Watts) who relayed "disturbing information" that the tipster had "received from her friend." The information included reports that the defendant said he had an explicit video of MV-1 on his phone, and he "frequently checked on" the young girls while they were showering. S.W. also conveyed to Snavely a screenshot of text messages sent by the defendant to MV-2, which showed the defendant inviting MV-2 to "stay the night" with him so they could "take a shower and have some fun." At the conclusion of the warrant application, Snavely wrote that he believed a search of the phone would "assist in recovering evidence on whether Matthew Childers has in his possession child pornography." Warrant Aff., ECF No. 41-2, PageID.221-23.

On October 15, 2020, the defendant went to the Taylor police station. The government says that he was interviewed by Snavely for around 15 minutes, and during that interview the defendant told Snavely that MV-1 had sent him "sexual videos and images," which the defendant said were unsolicited and sent on her own initiative. The defendant said that he had deleted all of his text message communications with MV-1, but he had kept the images and videos that she sent. Snavely says that during this first interview the defendant appeared lucid, cooperative, and responsive, and he did not seem to be incapacitated in any way. At one point the defendant said

that he had "naked photos" of MV-1, took out his phone, and asked Snavely, "Want to see them?" The defendant opened a storage folder and showed the phone to Snavely as he played the video of MV-1 masturbating, and he then "handed over his phone." Snavely told the defendant that he had a warrant to search the phone, and the defendant "twice stated 'go ahead.'" The defendant said it was "fine" when Snavely asked if he could take the phone and "back it up," and he also said "I don't care" about further inspection of the phone. After the brief interview, the defendant then was allowed to leave. However, Snavely kept the phone and later turned it over to federal agents for forensic analysis.

After the October 15, 2020 interview, Snavely obtained a second warrant to search the phone. The defendant has not challenged the second warrant or the further search of the phone on that authority. Upon execution of the search on that second warrant, Detective Snavely discovered a "secret photo vault," which contained around 30 images of MV-1 in "various states of undress." He also located a video of MV-1 masturbating while the defendant "directed" her actions, and another video of the defendant and MV-1 having intercourse. The second video clearly showed MV-1's face, and the defendant's voice was audible as he again directed her.

On November 4, 2020, the defendant was charged in an indictment with production of child pornography, 18 U.S.C. § 2251(a), receipt of child pornography, 18 U.S.C. § 2252A(a)(2), and possession of child pornography, 18 U.S.C. § 2252A(a)(5)(B). The jury trial initially was set to begin on February 23, 2021, but the trial was put off several times and eventually adjourned without date pending the resolution of the defendant's previously filed motion to suppress. After that motion was denied, the defendant expressed a desire to retain counsel, and his appointed attorney was substituted out of the case. The relationship with new counsel did not go well, and

that lawyer was allowed to withdraw, and a new lawyer was appointed under the Criminal Justice Act. New counsel then filed the present motion.

## II.

The defendant points to numerous statements in the warrant affidavit, which he contends are false. He argues that in the absence of those falsehoods, the basis of probable cause is nonexistent. The defendant also asserts that the October 14, 2020 warrant (the warrant that authorized the first search of the phone) was invalid because it "was not signed" by the issuing magistrate. However, the government has since produced a signed copy of the search warrant.

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Liberty Coins, LLC v. Goodman*, 880 F.3d 274, 280 (6th Cir. 2018) (quoting U.S. Const. amend. IV). Thus, "[a] search is generally unreasonable if it is not conducted pursuant to a warrant issued upon probable cause." *Ibid.* (citing *Camara v. Municipal Court of City & County of San Francisco*, 387 U.S. 523, 528-29 (1967)). "Probable cause exists if 'the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found [within the place or device] to be searched.'" *Peffer v. Stephens*, 880 F.3d 256, 263 (6th Cir. 2018) (quoting *Greene v. Reeves*, 80 F.3d 1101, 1106 (6th Cir. 1996)).

But false facts cannot be considered when assessing probable cause. Under *Franks v. Delaware*, if the defendant shows by a preponderance of evidence that a search warrant affiant committed perjury or made a statement in reckless disregard for the truth, the offending statements must be excised from the affidavit and probable cause reassessed. *Franks*, 438 U.S. at 155-56.

The defendant asserts via his own affidavit that the following factual grounds stated in the warrant affidavit all were false or misleading: (1) HM's claim that her minor daughter MV-1 had

"cognitive impairments" and "functioned at the level of a 10-year-old," when in fact MV-1 is "as intelligent as any 16-year-old" and merely has "a learning disability," (2) HM's claim that her minor daughter MV-2 functioned at a "slightly decreased maturity level," when she also merely has a "learning disability," (3) HM's claim that the children were left at the residence with the defendant while she went to the store, when "the girls were not left at the residence but accompanied HM wherever she went," (4) the statement that the affiant found "sexually explicit statements" from the defendant on MV-1's cell phone, when no such statements existed, (5) the affiant's statement that text messages were found on MV-1's cell phone in which the defendant "requested pictures and videos of MV-1," when no such texts existed, (6) the affiant's recitation of statements by MV-1 that the defendant "messed with her" while she was sleeping, which was fabricated by MV-1 since no such encounter occurred, (7) the affiant's recital that MV-1 told her mother about the contact incident, and that "a report was made," when no such events occurred, (8) the false indication that the defendant had "convictions" (plural) for assault, when he had only one prior conviction, (9) recitations that the affiant received a report from Stephanie Watts about "disturbing information" Watts received from "a friend" suggesting that there was a video on the defendant's cell phone of MV-1 masturbating, when no such video existed and Watts fabricated the incriminating conversation with the unnamed "friend," (10) the "uncorroborated" claim that the defendant frequently "checked on" HM's daughters while they were showering, and (11) the affiant's claim that he viewed on Watt's cell phone a screenshot of a text message from the defendant to MV-2 offering to allow the daughters to come to his house to shower and "have some fun," which was "taken out of context" because the offer was made merely as a courtesy, since at the time HM and her daughters were "homeless," and the "fun" contemplated merely referred to allowing the children to "watch TV" or "play games" after getting "cleaned up."

Childers says that he can prove the falsehoods in the affidavit if he is allowed an evidentiary hearing. To be entitled to a *Franks* hearing, the defendant must "1) make[] a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit; and 2) prove[] that the false statement or material omission is necessary to the probable cause finding in the affidavit." *United States v. Young*, 847 F.3d 328, 348-49 (6th Cir. 2017)). "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Franks*, 438 U.S. at 171. The Sixth Circuit has characterized this as "a heavy burden." *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019).

Childers has not carried that burden. But even if he had, the present motion arguments do not help his position. The Court denied the defendant's first motion to suppress after finding that the warrant affidavit recited at least two facts that were facially sufficient to establish probable cause regardless of other information presented. Those two facts are not plausibly controverted by the defendant's affidavit, which is the sole source of contrary factual information presented with the motion, because the circumstances are ones about which the defendant plainly has no basis of personal knowledge to offer contradictory testimony. And the rest of the statements are not "necessary to the probable cause finding in the affidavit." *Young*, 847 F.3d at 349.

When the Court previously ruled on the record that the affidavit sufficiently established probable cause to search the phone, it discussed the specific facts that it found were sufficient for that determination:

> The question about whether the statement relating to "sexually explicit messages" is sufficient to establish probable cause is really not the question here, because that

>was really part of the totality of the information. Certainly "sexually explicit messages" can be determined to be vague and not precise; however, "sexually explicit messages" can reasonably be taken to mean something of a sexual nature and "explicit" meaning something involving some sort of a sex act or some conduct or something describing something specific and sexual in nature.
>
>The affidavit also states that the defendant requested pictures and videos of MV-1. There was information that came from HM, the mother, that was corroborated by Snavely's investigation of MV-1's phone, and the affidavit stated that upon inspection of the phone Snavely did locate nude photos and a video of the minor child masturbating. Those facts, apart from any other facts recited in the affidavit, I suggest, justify a reasonable inference that the defendant asked the minor victim to take compromising photos and send them to him and reasonable suspicion that she complied with those requests.
>
>The other information, I suppose, could be described as make-weight information, but it does further tend to corroborate the probable cause finding that child pornography, and specifically meaning the video of MV-1 masturbating, would be located on the defendant's phone. The government also cites *United States v. Leon*, but I don't believe there is a need to even go to the doctrine of good-faith reliance, because I believe that there is sufficient probable cause to validate the warrants, and therefore, the motion to suppress the evidence seized under the search warrant will be denied.

Hr'g Tr., ECF No. 65, PageID.498-99.

As noted above, the defendant asserts that numerous factual statements in the affidavit are false. However, the two crucial facts that the Court found dispositive were that (1) the affiant investigated MV-1's cell phone and found records of text messages sent by the defendant requesting compromising photos, and (2) upon further investigation of MV-1's phone, the affiant also discovered nude photos of MV-1 and a video of her masturbating. The defendant postulates that no such material was found on MV-1's phone during the affiant's examination of it. But he does not recite any basis for personal knowledge about the contents of MV-1's phone or the results of the affiant's examination, and it is undisputed that he was not present when MV-1's phone was provided to or examined by the affiant. Because the defendant has presented no basis of personal knowledge about the affiant's review of the phone, the defendant has not made the required "substantial preliminary showing that the affiant knowingly and intentionally, or with reckless

disregard for the truth, included a false statement or material omission in the affidavit." *Young*, 847 F.3d at 348-49; *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000) ("We have had to disregard many of Plaintiff's allegations because they were not made with Plaintiff's personal knowledge, or were otherwise based on hearsay."); *see also Wheeler v. Miami Valley Career Tech. Ctr.*, No. 20-141, 2022 WL 770162, at *1 n.1 ("Affidavit statements must be based on personal knowledge and must set forth facts that would be admissible in evidence, and show that the affiant is competent to testify about the matter asserted.") (quotation marks omitted). Moreover, the defendant's claim that no solicitous messages or pornographic images were found on MV-1's phone is simply implausible in light of the undisputed fact that when the defendant visited the police station on October 15, 2020, he admitted to Detective Snavely that he had explicit images of MV-1 on his own phone, and he then proceeded to open the device, display the images, and show them to the detective.

Because those two facts are sufficient to establish probable cause to search the cell phone, the truth or falsity of the remaining statements does not matter for determining whether a *Franks* hearing is justified. Moreover, though, the record here sets forth no facts suggesting that any supposed misstatements in the affidavit about the contents of MV-1's phone were made other than innocently or negligently. "There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Franks*, 438 U.S. at 171. And that offer of proof "must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Ibid.*; *see also United States v. Stanley*, 791 F.2d 936, 1986 WL 16809, at *3 (6th Cir. 1986) ("[T]he magistrate concluded that defendant failed to meet the remaining aspect of the *Franks* test and was unable to establish that the substance of the affidavit had been intentionally false. At best, he concluded that defendant could only show police

negligence, and even over-zealousness and error on the law [but he had] not shown the level of deception or reckless disregard for the truth that *Franks* requires to excise portions of the [] affidavit."); *United States v. Ogden*, No. 06-20033, 2008 WL 4415176, at *3 (W.D. Tenn. Sept. 22, 2008) ("Defendant has done nothing more than simply list out three investigative leads omitted from the warrant affidavit and made a conclusory allegation that there was misconduct without any further proof.").

As the Court observed at the hearing on the first suppression motion, all of the other information in the affidavit essentially is merely "make-weight" and unnecessary to a finding that probable cause was shown based on the several dispositive facts noted above. It is well settled that in order to justify a *Franks* hearing, the defendant must "prove[] that the false statement or material omission is necessary to the probable cause finding in the affidavit," *Young*, 847 F.3d at 348-49, and he has not so proven here, because, as the Court previously concluded, none of the other particular facts alluded to in the present motion are "necessary" to the probable cause finding.

### III.

The defendant has not carried the heavy burden of showing that statements made in the warrant affidavit were false and made with reckless disregard or knowledge of their falsity. Moreover, the defendant has no basis in personal knowledge to contradict the two statements which the Court found sufficient to establish probable cause, and his position that those statements were false is simply incredible in light of other undisputed facts in the record.

Accordingly, it is **ORDERED** that the defendant's motion to suppress evidence (ECF No. 86) is **DENIED** for the reasons stated above and on the record.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: January 11, 2023