UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

CRIMINAL NO. 20-20538

v.

HON. DAVID M. LAWSON

MATTHEW DARREL CHILDERS,

      Defendant.

**United States' Response and Brief in Support Opposing Defendant's Motion to Preclude the Government's Forensic Interview Expert Witness (ECF No. 98, PageID.720)**

For the reasons stated in the government's brief, this Court should deny the defendant's motion or, in the alternative, reserve ruling until during trial when the Court can better assess whether the testimony of the forensic interviewing expert would be helpful to the jury.

      Respectfully submitted,

      DAWN N. ISON
      United States Attorney

      *s/Tara Mathena Hindelang*
      TARA MATHENA HINDELANG
      Assistant United States Attorney
      211 W. Fort Street, Suite 2001
      Detroit, MI  48226
      (313) 226-9543
      Tara.Hindelang@usdoj.gov

Dated: March 14, 2023      Bar No. P78685

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                                                                    CRIMINAL NO. 20-20538

v.                                                  HON. DAVID M. LAWSON

MATTHEW DARREL CHILDERS,

        Defendant.

---

**United States' Response to the Defendant's Motion in Limine to Preclude the Government's Forensic Interview Expert Witness (ECF NO. 98, PageID.720)**

---

      The United States intends to call Ms. Amy Allen to factually testify as to her forensic interview of MV-1 and, potentially, to aid the jury by testifying about forensic interviews generally, the prevalence of delayed or layered disclosures in sexual assault cases, trauma-bonding in cases of sexual exploitation, and her experience with compliant teenage victims. These matters are far outside the common juror experience. Ms. Allen would provide reliable and crucial assistance to the jury in understanding discrete aspects of how the defendant employed, used, persuaded, induced, enticed, or coerced MV-1 to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct. Because her testimony on these subjects is admissible under Rule 702, Defendant's motion

2

should be denied. Alternatively, the Court should reserve ruling until trial when the Court can better assess whether Ms. Allen's testimony would be helpful to the jury.

Defendant also moves to control the United States' order of proofs. They do not cite an applicable rule or develop their argument. They instead leave the Court to do the work and waive their request.

**I.   Ms. Allen should be allowed to aid the jury in understanding the circumstances of sexual exploitation of a minor.**

Ms. Amy Allen forensically interviewed MV-1 in October 2020, and as such, she will testify as a fact witness about that interview.[1] The United States may also call Ms. Allen to testify as an expert in forensic interviewing. Under Federal Rule of Evidence 702, "a person with 'specialized knowledge' qualified by his or her 'knowledge, skill, experience, training, or education' may give opinion testimony if it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *United States v. Johnson*, 488 F.3d 690, 698 (6th Cir. 2007). Expert testimony assists the jury in understanding "an area which is 'not within the experience of the average juror.'" *United States v. Meadows*, 822 F. App'x 434, 437 (6th Cir. 2020) (*citing United States v. Thomas,* 74 F.3d 676, 682-83 (6th Cir. 1996), *abrogated on other grounds by Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997)). "Law enforcement officers may testify concerning the

---

[1] The United States provided an amended Rule 16 disclosure to defense counsel on February 27, 2023, clarifying that Ms. Allen is also a fact witness and will testify about her forensic interview of MV-1.

3

methods and techniques employed in an area of criminal activity and to establish 'modus operandi' of particular crimes." *United States v. Pearce*, 912 F.2d 159, 163 (6th Cir. 1990), opinion clarified sub nom, *United States v. Thorpe*, 947 F.2d 946 (6th Cir. 1991).

The Court must conduct a three-step analysis before expert testimony is admitted: "First, the witness must be qualified by 'knowledge, skill, experience, training, or education.' Second, the testimony must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.' Third, the testimony must be reliable." *United States v. Rios*, 830 F.3d 403, 413 (6th Cir. 2016) (*citing In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008)). Expert testimony is admissible if the subject matter of the testimony is "beyond the ken of the average juror." *Id*. (*citing United States v. Amuso*, 21 F.3d 1251, 1263 (2d Cir.)).

The "rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Advisory Committee Notes for 2000 Amendments. Rule 702 does not limit expert testimony to scientific methods, and it permits a person to provide opinion testimony based on experience alone that has led to any type of specialized knowledge. *Id*. Rule 702 anticipates that law enforcement agents can provide useful testimony and opinions on topics related to their field of investigative expertise, and that their experiences form the "principles" and "methods" required by Rule 702.

4

"There are innumerable trades and practices that employ their unique devices, feints, and codes that may mean nothing to the untrained observer but may speak volumes to a maven qualified by experience or training." *Johnson*, 488 F.3d at 698. The United States may decide to call one such maven: Ms. Allen. She will provide reliable and helpful testimony to aid the jury in determining specific facts at issue.

A. **Ms. Allen is qualified to testify about forensic interviewing and victim characteristics.**

As an expert witness, Ms. Allen will explain the purpose of a forensic interview, reasons why minor victims of exploitation would not disclose during a forensic interview or to law enforcement, the prevalence of delayed or layered disclosures, trauma-bonding, as well as her experiences with child sexual assault and exploitation victims.

Ms. Allen has repeatedly been recognized as an expert in forensic interviewing. *See*, *e.g.*, *United States v. Bell,* No. 17-CR-20183, 2022 WL 1014497, at *2 (E.D. Mich. April 4, 2022) (Goldsmith, J.); *Martin v. Haas*, No. 2:11-CV-15034, 2017 WL 3479495, at *4 (E.D. Mich. Aug. 14, 2017), *aff'd*, 731 F. App'x 443 (6th Cir. 2018) (Roberts, J.) ("Without objection, Allen was qualified as an expert in forensic interviewing"); *LaRose v. Bell*, No. 2:09-CV-14911, 2012 WL 559929, at *7 (E.D. Mich. Feb. 21, 2012) (Borman, J.) (qualified as an expert in forensic interviewing); *Craig v. Rivard*, No. 2:10-CV-12620, 2012 WL 5874662, at *2 (E.D. Mich. Nov. 20, 2012) (Steeh, J.). ("qualified as an expert in

5

forensic interviewing"); *United States v. Kellogg*, No. 3:14-CR-00199, 2016 WL 737690, at *2 (N.D. Ohio Feb. 25, 2016) ("[Amy] Allen is clearly a highly trained and experienced forensic interviewer. Both sides conceded as much. In fact, defense expert Jolie Brams commended her on the proper conduct of a forensic interview of both victims.").

Despite this and the fact that Rule 702 does not limit expert testimony to scientific methods, Defendant challenges Ms. Allen's qualifications as an expert in this case. Defendant's challenge is based on the misperception that, having conducted over 5,000 forensic interviews, she has exclusively interviewed children 13 and under that did not include federal child pornography charges. Ms. Allen has, in fact, conducted interviews with minor victims of all ages, in various parts of the country. She has conducted over 6,000 forensic interviews in career. To qualify for a forensic interview, in Oakland County for example, the child need only be under the age of 18.

A simple review of Ms. Allen's resume, which was provided to Defendant, shows Ms. Allen has either attended or presented at trainings in her subject matter expertise beginning in 1987 and up until near the present time.

Ms. Allen's background consists of over 5,000 interviews from thousands of investigations of minors and adults who were victims of an array of sexual and physical abuse crimes. Ms. Allen has a comprehensive understanding about a variety of victims that she can draw from when testifying about the trauma-

6

bonding, delayed disclosures, and compliant victims.

In *United States v. Bennett*, 258 F. App'x 671, 678 (5th Cir. 2007), the lower court permitted an FBI forensic interviewer to "testify regarding compliant victims and adolescent behavior." The forensic interviewer "had conducted about 500 interviews with children or adolescents, the majority of which involved children that had been exploited online." *Id*. at 679. At the time, the FBI forensic examiner had participated in significantly less interviews than Ms. Allen has at present. Like Ms. Allen, she also worked with various child abuse organizations in her past. Id. at 678-79. The court noted the interviewer's experience was "extensive" and that "the government argues that Finnegan's personal experience, education, training, and observations sufficiently qualified her to testify. We agree." Id. at 678. With a fraction of the experience Ms. Allen has, the court allowed the FBI forensic examiner to testify about specific characteristics of the "compliant victims" she interviewed.

In *United States v. Young*, 623 F. App'x 863, 865 (9th Cir. 2015), the district court found that the forensic interviewer was qualified to testify as an expert. The interviewer "had degrees in criminal justice and psychology, had been a forensic interviewer for almost six years, had interviewed more than 1,800 children, and had 'specialized knowledge' about '[t]he process of victimization' and '[t]he process of disclosure.'" *Id*. Comparatively, Ms. Allen has a degree in psychology along with a degree in behavioral sciences, a master's in justice and security,

7

thirteen years of forensic interviewing experience, and over 6,000 forensic interviews.

### B. Ms. Allen's testimony will be relevant.

Ms. Allen will provide expert testimony to assist the common juror to understand the common characteristics of an alleged victim of sexual abuse or exploitation. First, she will explain a forensic interview, and why forensic interviews are used when interviewing potential minor victims. Next, Ms. Allen will explain, based on her extensive training and experience, why victims would or would not disclose ongoing abuse during a forensic interview. For example, the average juror will question why an alleged victim would not report the trauma they endured when under the protection of law enforcement. Or, why an alleged victim would protect their abuser. Or, why a victim would do what their abuser asked without objection.

In *Young*, cited above, the court found that the forensic interviewer could provide expert testimony about her experience regarding victim disclosures, that "child sexual-abuse victims often have a 'difficult time' reporting their abuse; that when they do disclose the abuse, it is often 'in an imprecise fashion' and without detail; and that 'delayed disclosures, piecemeal disclosures and/or even recanted disclosures,'" are "coping mechanism[s]." *Young,* 623 F. App'x at 865-66. The court noted "[w]e have held that similar testimony about the 'general behavioral characteristics' of child sexual-abuse victims, rather than about the particular

8

victims in a case, is not improper bolstering." *Id.* at 866.

The average juror knows very little about victim dynamics in the context of child exploitation cases and may misconstrue a victim's silence, or lack of cooperation, to mean nothing happened to them. These are issues that may appear in this case. Ms. Allen will explain, based on her training and experience, common reasons victims would and would not cooperate with law enforcement, and when and how. Moreover, she will explain why a victim may go as far as protecting their abuser despite the nature of their relationship. These are all issues, relevant to this case, and beyond the purview of the average juror.

### C. Ms. Allen's testimony will be reliable.

Ms. Allen's generalized testimony about forensic interviews, compliant victims, layered disclosures, and trauma bonding will help contextualize MV-1 for the jury. *See Bell,* 2022 WL 1014497 at *3. "District courts are afforded deference in 'gatekeeping' scientific evidence, and the application of *Daubert* should be flexible." *Bennett,* 258 F. App'x at 679. Likewise, Ms. Allen's testimony does not need to stem from peer reviewed studies, articles, or bodies of work. *See id.* The reliability for her testimony does not hinge on those things or even on Ms. Allen's personal experience with MV-1 but comes from her ample training and experience.

Rule 702 allows for Ms. Allen's testimony, as it will be helpful to the jury. Thus, the Court should not exclude Ms. Allen's testimony. If the Court has any

9

hesitation, the United States requests that the Court reserve ruling on Ms. Allen's expert testimony until trial when the Court can better assess how helpful her testimony would be to the jury.

**II.      Defendant failed to develop and waived their request for Ms. Allen to testify after the victims. And their plain request should not override the United States' interest and trial strategy.**

Defendant also moves for a pre-trial hearing and for the Court to set the United States' order of witnesses. But Defendant does not cite the applicable Rule or cite any cases in support of his demand. "It is not [the Court's] . . . job to put flesh on the bare bones of an underdeveloped argument . . . and the defendant's plaint could be rejected for that reason alone." *United States v. Mathur*, 624 F.3d 498, 508 (1st Cir. 2010)). "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997).

First, for the same reasons stated above, there is no need for a hearing to screen Ms. Allen's testimony. Second, while this Court has wide latitude over the order of testimony at trial, *United States v. Bailey*, 973 F.3d 548, 564 (6th Cir. 2020), this "discretion should be used sparingly and good reason should exist before the court intervenes in what is essentially a matter of trial strategy." *United States v. Machor*, 879 F.2d 945, 953-54 (1st Cir. 1989). *See also Davie v. Mitchell*, 291 F. Supp.2d 573, 617 (N.D. Ohio 2003), *aff'd*, 547 F.3d 297 (6th Cir. 2008)("The order

10

in which to call witnesses is a fundamental aspect of trial strategy[.]"). And "the Government has an interest in the order of its presentation[.]" *United States v. Drummond*, 69 F.App'x 580, 582–83 (3d Cir. 2003). Defendants' plain assertion should not override that interest.

### III. Conclusion

For the foregoing reasons, the Court should deny Defendant's motion. Alternatively, the Court should reserve ruling until trial when the Court can better assess the helpfulness of Ms. Allen's testimony.

Respectfully submitted,

DAWN N. ISON
United States Attorney

*s/Tara Mathena Hindelang*
TARA MATHENA HINDELANG
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9543
Tara.Hindelang@usdoj.gov
Bar No. P78685

Dated: March 14, 2023

## Certificate of Service

I certify that on March 14, 2023, I electronically filed the foregoing document with the Clerk of the Court of the Eastern District of Michigan using the CM/ECF system, which will send notification to all counsel of record via e-mail.

*s/Tara Mathena Hindelang*
TARA MATHENA HINDELANG
Assistant United States Attorney
